ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

BENJAMIN K. KLEINMAN (NYBN 5358189)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    benjamin.kleinman2@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JOSE EDUARDO GARCIA LOPEZ,<br><br>    Defendant. | CASE NO. 4:23-cr-00081-001 JST<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Hearing Date: May 31, 2024<br>Time: 9:30 a.m.<br>Judge: Hon. Jon S. Tigar |

## I.    INTRODUCTION

The defendant, Jose Eduardo GARCIA LOPEZ, posted multiple firearms and controlled substances for sale on Instagram. However, the defendant is not simply a trafficker of firearms or drugs. GARCIA LOPEZ and his co-defendant committed a gunpoint robbery and stole $1,450 of currency belonging to the United States.

He subsequently pleaded guilty to a single count Indictment of Robbery of Property Belonging to the United States and Aiding and Abetting, in violation of 18 U.S.C. §§ 2112 and 2. Moreover, the defendant's behavior on pretrial release has provided little indication that the case has had a significant deterrent effect to date. The defendant has had multiple violations of the conditions of the pretrial release and lied to United States Pretrial Services on numerous occasions. Therefore, given the violent nature of

the offense, the criminal activity leading up to the robbery, and the defendant's repeated violations while on pretrial release, the government recommends a low-end Guidelines sentence of 41 months' imprisonment, three years' supervised release, and a $100 special assessment.

## II.     OFFENSE CONDUCT AND SENTENCING GUIDELINES CALCULATION

<u>Firearms and Narcotics Trafficking via Instagram</u>

Beginning on or about at least January 2023, GARCIA LOPEZ posted various firearms and controlled substances (pills) for sale on Instagram. On January 28, 2023, at the direction of ATF, the victim replied to an Instagram story posted by GARCIA LOPEZ featuring a FN Herstal 5.7 semi-automatic pistol with a laser attached to the accessory rail of the firearm. *See* Exhibit A. The victim requested to buy the firearm. GARCIA LOPEZ then sent a video of a two-tone handgun with an attachment on the accessory rail, which was a different firearm than the FN. *See* Exhibit B. An AR-type weapon can be seen in the background inside an orange bucket. The hand tattoo seen in Exhibit B matches the hand tattoo of GARCIA LOPEZ. GARCIA LOPEZ also sent a picture of the two-tone firearm and posted pictures of the suspected controlled substances. See Exhibits C; *see also* Exhibit D.

Between January 29, 2023, and March 14, 2023, GARCIA LOPEZ and the victim exchanged messages regarding the purchase of firearms. Ultimately, the victim agreed to purchase the firearm (Exhibit E) for $950. In the Instagram photo sent to the victim, a serial number was visible on the ejection port of the firearm ("US228327"). *See* Exhibit E. An ATF SA conducted a records check of the serial number, which showed that the firearm was one of two firearms reported stolen from a vehicle in Newark, California.

<u>Armed Robbery</u>

On March 14, 2023, at the direction of ATF, the victim and the defendant scheduled the time and location for the controlled purchase, which was to take place the following day at 4:00 pm. On March 15, 2023, law enforcement surveillance units and a rescue team were in place prior to the victim's arrival at the agreed-upon location for the firearms transaction. ATF provided the victim with $1,450 of pre-recorded ATF funds.

On March 15, 2023, in the Northern District of California, Samuel Valencia-Gonzalez and GARCIA LOPEZ drove GARCIA LOPEZ's Honda Civic to meet the CI. PSR ¶ 9. Valencia-Gonzalez and GARCIA LOPEZ brought a firearm but intended to use the firearm to rob the CI at gunpoint and had no intention of completing the firearm sale. *Id.* According to GARCIA LOPEZ, prior to the robbery, he left the firearm in the middle console of the vehicle. GARCIA LOPEZ exited his car and entered the victim's car on the passenger side. Valencia-Gonzalez then entered the backseat of the victim's car. *Id.* The victim was in the driver's seat. *Id.* The victim gave GARCIA LOPEZ $950 to buy the firearm, which GARCIA LOPEZ counted and then stole. *Id.* Valencia-Gonzalez put the firearm to the CI's head. *Id.* After GARCIA LOPEZ counted the money, Valencia-Gonzalez and GARCIA LOPEZ then threatened and robbed the victim. *Id.* GARCIA LOPEZ reached into the victim's pockets and stole an additional $500. *Id.*

During the interaction, the CI had his hands up and stated, "You want my money, take it! You don't have to point the gun at me." PSR ¶ 10. GARCIA LOPEZ threatened the CI, stating, "Don't be coming around." *Id.* GARCIA LOPEZ then returned to the Honda in which he had arrived, now with the $1,450 GARCIA LOPEZ had taken from the CI. *Id.* Valencia-Gonzalez returned to the car with the firearm. *Id.* Additionally, before the robbery, GARCIA LOPEZ placed five rounds of 9mm ammunition in the front air vent of the vehicle. *Id.* The $1,450 GARCIA LOPEZ stole from the CI was money that belonged to the United States, and specifically, ATF. *Id.*

After the robbery, GARCIA LOPEZ and Valencia-Gonzalez returned to their car and were immediately arrested. The firearm was recovered in the center console of the defendants' car, and the ATF funds were recovered from GARCIA LOPEZ's person. While the firearm appears similar to the one shown on Instagram, this firearm, unlike the one on Instagram, does not have a serial number. ATF also obtained a search warrant for the defendants' car and recovered five rounds of 9mm ammunition (Exhibit F) in the front air vent during the subsequent search and six pills (Exhibit G) on March 16, 2023. I note that a field test for the pills was negative for a controlled substance.

Procedural History

On March 23, 2023, the defendants were indicted on charges of Robbery of Property Belonging to the United States and Aiding and Abetting in violation of 18 U.S.C. § 2112, 2. PSR ¶ 1. On April 3,

2023, the defendants were arrested in the Eastern District of California and arraigned the following day in the Northern District of California. PSR ¶ 4. On December 1, 2023, the defendant pled guilty to Robbery of Property Belonging to the United States and Aiding and Abetting in violation of 18 U.S.C. § 2112, 2, which was the sole count of the Indictment. PSR ¶ 3.

The PSR Accurately Calculates the Offense Level

The government agrees with the offense level as set forth in the PSR. PSR ¶¶ 15-24. The PSR calculates the offense level as follows:

| Counts 1: Robbery of Property Belonging to the United States and Aiding and Abetting (18 U.S.C. §§ 2112 and 2) | | |
|---|---|---|
| | U.S.S.G. Section | Level |
| Base offense level | § 2B3.1(a) | 20 |
| Specific Offense Characteristics | § 2B3.1(b)(2)(C) – a firearm was brandished | +5 |
| Acceptance of responsibility | § 3E1.1 | -3 |
| Total offense level | | 22 |

The government also agrees with the PSR's calculation; the defendant has Criminal History Category (CHC) of I. PSR ¶ 28. With a total offense level of 22 and a CHC of I, the advisory Guidelines range here is 41-51 months' imprisonment. *Id.* ¶ 53.

III.   SENTENCING RECOMMENDATION

**A.  Legal Standard**

The United States Sentencing Guidelines serve as "the starting point and the initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991 (citation omitted). In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include:

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (3) the need for the sentence imposed to afford adequate deterrence to criminal conduct; and

  (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### B. The Government's Recommended Sentence

Given the violent nature of the offense, the criminal activity leading up to the robbery, and the defendant's repeated violations while on pretrial release, the government recommends a low-end Guidelines sentence of 41 months' imprisonment, three years' supervised release, and a $100 special assessment. The government's sentence is sufficient but not greater than necessary to accomplish the goals of sentencing.

Beginning with 18 U.S.C. § 3553(a)(1), the government's recommended sentence reflects the violent nature and circumstances of the offense. Here, the defendant committed a violent act and poses a serious danger to the community. The armed robbery, which was orchestrated by the defendant, was clearly violent and dangerous. The defendant planned and executed an armed robbery in which a gun was pointed at a victim's head as the defendant casually rifled through his pockets, stealing a total of $1,450, as the victim pleaded with his hands in the air. To make matters worse, the defendant concluded the interaction by threatening the victim. The defendant's callous disregard for the victim is extremely troubling. The defendant's actions in the instant matter posed a significant danger to the community, such that a sentence within the Guidelines is appropriate.

Furthermore, the defendant's actions leading up to the robbery also shows longstanding involvement in criminal activity. The defendant is a firearms trafficker and drug dealer. The government notes that several search warrants were executed on the defendants' homes and vehicles but none of the three other firearms posted on Instagram by GARCIA LOPEZ were recovered. The most likely conclusion is GARCIA LOPEZ's firearms trafficking efforts were successful and that they were sold prior to the execution of the warrants. Therefore, the firearms are now likely in circulation within the community. The dangerousness of the defendant's actions is clear.

Moving to 18 U.S.C. § 3553(a)(2), the defendant's arrest has not appeared to significantly change his behavior as he has violated his pretrial release conditions on numerous occasions, and a low-

end Guidelines sentence is necessary to promote respect for the law and reflects the seriousness of the offense. Regarding the pretrial release violations, on May 30, 2023, while on home confinement, the defendant took oxycodone pills. The defendant's explanation is as troubling as his behavior. The defendant stated "he was cleaning his room and found marijuana, alcohol, and oxycodone. The defendant advised he threw away the alcohol and marijuana but admitted to taking the pills." Dkt. 63, at 1. The defendant's explanation and description of the events is not credible. The idea that he simply found the illegal substances while cleaning his room, and threw out some but then took the pills seems highly unlikely.

Moreover, the defendant submitted diluted samples for his drug tests on five separate occasions, including the months of October and December 2023, and January and February 2024. Dkt. 91, at 2. The diluted samples are just another example of the defendant's lies and deceptions. The defendant ultimately, after having lied to pretrial services for nearly six months, tested positive for oxycodone on February 7, 2024. *Id.* at 1. It was only after the defendant tested positive that he admitted to using oxycodone on February 3, 2024. Then on February 21, 2024, the defendant's counselor contacted his pretrial services officer "who advised that the defendant informed the counselor that [the defendant] went to work saw and old friend who gave the defendant an oxycodone pill." *Id.* at 2. The defendant's account is not credible because he was not working at that time. The last time he worked was in September 2023. PSR ¶ 47. Additionally, a PSA 8 hearing was scheduled on March 27, 2024, and the defendant tested presumptive positive for oxycodone the day of the hearing and was then placed back on home confinement. The defendant did not come forward and admit the use on his own.

In explicably, the defendant, through his attorney, explained that he was not working because his social security had expired. The government assumes the defendant was referring to his employment authorization, but that did not expire until January 20, 2024. As previously stated, the defendant only worked one month in September 2023. His explanation that he was not working in March because of his employment authorization status is untrue. He had not worked since September 2023, and has only ever been employed sporadically at best.

However, this is also the defendant's first arrest and conviction, and he is relatively young at 22 years old.  Therefore, weighing the mitigating factors against the defendant's conduct and behavior, the government recommends a low-end Guidelines sentence.

**CONCLUSION**

For the foregoing reasons, the United States recommends that the Court sentence the defendant to 41 months' imprisonment, three years supervised release, and a $100 special assessment.

DATED:  May 24, 2024                                        Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

 /s/ Benjamin K. Kleinman
_____
BENJAMIN K. KLEINMAN
Assistant United States Attorney